## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ERIC BENNETT,
           Appellant,

      v.

DEPARTMENT OF
    TRANSPORTATION,
           Agency.

DOCKET NUMBERS
NY-0752-14-0073-X-1
NY-0752-14-0073-C-2

DATE:  March 13, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jonathan Bell, Esquire, and Susan Tylar, Esquire, Syosset, New York, for
   the appellant.

Daniel P. Kohlmeyer, Esquire, Jamaica, New York, for the agency.

Briana Martino, Des Plaines, Illinois, for the agency.

## BEFORE

Henry J. Kerner, Vice Chairman
Cathy A. Harris, Member

## FINAL ORDER

In an October 26, 2022 Order, the Board found the agency in noncompliance with its final decision in the underlying appeal, which reversed the appellant's removal and ordered him reinstated with back pay and benefits, to the extent the agency:  (1) failed to pay him a $6,000 bonus as part of his back pay award; and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

(2) failed to provide sufficient and clear information regarding the overtime hours the appellant was entitled to in his back pay award. *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-C-2, Order (Oct. 26, 2022). Subsequently, in the compliance referral matter, the Board issued Orders finding that the agency complied with its obligations to pay the $6,000 bonus and to determine and explain the total number of hours of overtime the appellant was entitled to for the entire back pay period (754 hours). *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-X-1, Compliance Referral File (CRF), Tabs 5, 11. However, the Board found that the agency remained in noncompliance to the extent it failed to demonstrate that it properly calculated and paid the appellant the appropriate amount of overtime back pay for the 754 hours of overtime, with interest, and again ordered the agency to submit evidence and explanation demonstrating compliance. CRF, Tab 11.

For the reasons discussed below, we now find the agency in compliance and dismiss the petition for enforcement and the petition for review.

## DISCUSSION OF ARGUMENTS AND EVIDENCE OF COMPLIANCE

The appellant, an Air Traffic Control Specialist, sustained an on-the-job injury on March 25, 2011, and the Office of Workers' Compensation Programs (OWCP) accepted his claim for traumatic injury. *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-I-2, Refiled Appeal File, Tab 21, Initial Decision (ID) at 2-3. Effective November 9, 2013, the agency removed the appellant from Federal service due to his continuing unavailability for duty, noting that he had not reported for regular, full-time duty since his March 25, 2011 injury. ID at 1, 12-13. The appellant appealed his removal to the Board. In a July 29, 2016 initial decision, the administrative judge reversed his removal and ordered the agency to reinstate him effective November 9, 2013, with all appropriate back pay, interest, and restored benefits. ID at 27, 37. Neither party

petitioned for review of the initial decision, which became final on September 2, 2016. ID at 39.

The appellant petitioned for enforcement of the initial decision, arguing, in relevant part, that the agency failed to pay him a bonus he would have received but for the removal and failed to correctly calculate his overtime back pay. *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-C-1, Compliance File (C-1 CF), Tab 1; *Bennett v. Department of Transportation*, MSPB Docket No. NY-0752-14-0073-C-2, Compliance File (C-2 CF), Tab 6 at 6-8. In an August 1, 2017 compliance initial decision, the administrative judge found the agency in noncompliance only to the extent it failed to pay the appellant $6,000 in bonus payments. C-2 CF, Tab 11, Compliance Initial Decision (CID) at 3-6. The appellant petitioned for review of the compliance initial decision.

In an October 26, 2022 Order, the Board affirmed the compliance initial decision except as modified to find that the agency's failure to present clear and understandable information regarding its overtime back pay calculation constituted an additional basis of agency noncompliance. Oct. 26, 2022 Order, ¶¶ 1, 8-13. The Board ordered the agency to submit, into the compliance referral matter, evidence and a narrative statement of compliance demonstrating that it properly calculated the appellant's pre-removal overtime hours and that the back pay awarded to the appellant reflected that calculation. *Id.*, ¶ 14.

After receiving responses from both parties, CRF, Tabs 3-4, the Board issued a June 12, 2023 Order in this compliance referral matter finding the agency in compliance with its obligation to pay the appellant $6,000 in bonus back pay but still in noncompliance with its obligation to demonstrate that it had properly calculated and paid the appellant the appropriate amount of overtime back pay with interest for the entire back pay period (November 9, 2013, through November 6, 2016), CRF, Tab 5. Consequently, the Board again ordered the agency to submit evidence and explanation demonstrating compliance. *Id.* at ¶¶ 14-18. Both parties responded. CRF, Tabs 7-10.

In an October 31, 2024 Order, the Board found that the agency had established compliance with its obligation to determine and explain the total number of hours of overtime the appellant was entitled to for the entire back pay period and accepted the agency's conclusion that he was entitled to back pay for a total of 754 hours of overtime. CRF, Tab 11 at 4. However, the Board found that the agency remained in noncompliance with its obligations to correctly calculate and pay the appellant's overtime back pay award and to present clear and understandable evidence to the Board showing that such calculations and payments were accurate. *Id.* at 5-8. Accordingly, the Board ordered the agency to submit affidavit and documentary evidence and a detailed narrative establishing that it had properly calculated and paid the appellant for 754 hours of overtime and interest on that amount. *Id.* In addition, the Board ordered the agency to verify that it had in fact paid the appellant the correct amount in back pay and at the correct hourly rate for the 90.35 additional hours of overtime it conceded he was entitled to in its July 2023 submissions. *Id.* Both parties have responded. CRF, Tabs 12-16.

## ANALYSIS

When, as here, the Board finds a personnel action unwarranted, the aim is to place the appellant, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011); *King v. Department of the Navy*, 100 M.S.P.R. 116, ¶ 12 (2005), *aff'd per curiam*, 167 F. App'x 191 (Fed. Cir. 2006). The agency bears the burden to prove compliance with the Board's order by a preponderance of the evidence.[2] *Vaughan*, 116 M.S.P.R. 319, ¶ 5; 5 C.F.R. § 1201.183(d). An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan*, 116 M.S.P.R. 319, ¶ 5. The appellant may rebut the agency's evidence of

---

[2] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

compliance by making specific, nonconclusory, and supported assertions of continued noncompliance. *Id.*

As noted above, the only outstanding issues in this compliance matter are whether the agency has properly calculated and paid the appellant for 754 hours of overtime and interest on that amount and adequately explained its actions to the Board. CRF, Tab 11.

Overtime Back Pay

Under the Fair Labor Standards Act (FLSA), an employee's overtime entitlement includes: (1) the straight time rate of pay times all overtime hours worked; plus (2) one-half times the employee's hourly regular rate of pay times all overtime hours worked. 5 C.F.R. § 551.512(a). An employee's "straight time rate of pay" is "equal to the employee's rate of pay for his or her position (exclusive of any premiums, differentials, or cash awards or bonuses)," with exceptions not present here for annual premium pay. 5 C.F.R. § 551.512(b). An employee's "hourly regular rate" is the amount "computed by dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such compensation was paid." 5 C.F.R. § 551.511(a).

In response to the Board's October 31, 2024 Order, the agency submitted a declaration under penalty of perjury from a Senior Payroll Program Specialist, Leave and Earnings Statements (LES), and overtime pay calculation tables reflecting that the agency paid the appellant for 754 hours of overtime via three separate payments. CRF, Tab 12. These three payments were made as follows:

1. On December 20, 2016 (pay period 2016-16), the agency paid the appellant $48,573.25 in gross pay for 385 hours and 20 minutes of overtime for the overtime he would have worked from pay period 5 of 2015 through pay period 17 of 2016, *id.* at 8-9, 17, 24;

2.  On May 23, 2017 (pay period 2017-11)[3], the agency paid the appellant $37,870.71 in gross pay for 309 hours and 50 minutes of overtime for the overtime he would have worked from pay period 24 of 2013 through pay period 5 of 2015, *id.* at 9-10, 2, 25; and

3.  On July 25, 2023 (pay period 2023-15), the agency paid the appellant $7,447.27 in gross pay for an additional 58 hours and 50 minutes of overtime he would have worked across 2013, 2015, and 2016, *id.* at 10-11, 23, 26.

The Senior Payroll Program Specialist stated that the appellant's July 2023 payment was only for 58 hours and 50 minutes of overtime, instead of the 90.35 additional hours of overtime the agency had previously stated he was entitled to, because the other 32 hours had actually been paid in the May 2017 payment. *Id.* at 11. She explained that the discrepancy occurred because she was provided timecards for pay periods that had already been paid. *Id.*

The Senior Payroll Program Specialist also explained and provided worksheets showing that the agency calculated the appellant's overtime pay by adding his "straight time rate" to his "FLSA rate," which is ½ of his "hourly regular rate," and then multiplying this total by the number of overtime hours for each pay period. *Id.* at 8, 13-14. She stated that, across the three payments, the appellant's straight time rate ranged from approximately $75 to $81 and the FLSA rate fluctuated each pay period depending on how much other premium pay the appellant received during the pay period. *Id.* at 9-11.

The appellant responded that the agency had failed to adequately explain the overtime payments. CRF, Tab 13 at 5-6. He also argued that his standard hourly rate was approximately $80 and that the overtime rate should thus be approximately $120 per hour. *Id.* at 6. The appellant further argued that the agency had not

---

[3] The Senior Payroll Program Specialist explained that the May 2017 overtime was paid using an "outside the system payment," which caused the payment made in pay period 2017-11 to be shown in the adjustment column of the LES for pay period 2017-12. CRF, Tab 12 at 9-10, 19-22.

adequately explained why the additional 90.35 hours of overtime back pay the agency conceded it owed him had been reduced to 58 hours and 10 minutes. *Id.* at 6-7.

On December 24, 2024, the agency submitted another declaration under penalty of perjury from the Senior Payroll Program Specialist further explaining the overtime pay calculations. CRF, Tab 14. In the declaration, she stated that the appellant was paid at a different overtime hourly rate in each pay period due to the fluctuating FLSA rate and that each rate could be determined from the tables provided in its prior submission by dividing the total overtime pay for each pay period by the number of overtime hours shown. *Id.* at 8-9 (citing CRF, Tab 12 at 24-27). She noted that a sample of three pay periods from the tables reflected hourly overtime rates of $125.74, $123.24, and $122.08. *Id.* at 9.

In a January 21, 2025 reply, the appellant argued that the Senior Payroll Program Specialist's declaration was confusing to the extent it referred to four overtime payments, as she previously stated there were three. CRF, Tab 15 at 4-5. He also argued that the agency had still failed to explain why it represented that the appellant was owed an additional 90.35 hours of overtime but then only paid him for 58 hours and 10 minutes of overtime in its July 2023 payment. *Id.* at 6.

On January 30, 2025, the agency submitted another affidavit from the Senior Payroll Program Specialist addressing the appellant's concerns. CRF, Tab 16. The appellant did not respond to the agency's final submission.

After carefully considering the parties' submissions, we find that the agency's evidence and explanation establishes that it correctly applied the FLSA overtime formula to determine the appellant's overtime pay rate for each pay period and applied those rates to the hours of overtime owed per pay period. CRF, Tabs 12, 14, 16; 5 C.F.R. § 551.512. We further find that the agency has shown that it paid the appellant $48,573.25 for 385 hours and 20 minutes of overtime in December 2016; $37,870.71 for 309 hours and 50 minutes of overtime in May 2017; and $7,447.27 for 58 hours and 50 minutes of overtime in July 2023—

i.e., a total of $93,891.23 for the full 754 hours of overtime owed to him at an average overtime hourly rate of $124.52 ($93,891.23 divided by 754 = $124.52). CRF, Tab 12 at 8-10, 17-27. Although the appellant argued that the agency's first two responses to the Board's October 31, 2024 Order failed to adequately explain its overtime calculations, he has not presented any specific challenge to the agency's calculation of his hourly overtime rate—the average of which exceeds the $120 rate to which he argued he was entitled—and has not disputed the agency's evidence showing that he has now been paid for the full 754 hours of overtime. CRF, Tabs 13, 15.

To the extent the appellant remains unsatisfied with the agency's explanation as to why it stated in July 2023 that it owed him an additional 90.35 hours of overtime but then paid him only for an additional 58 hours and 50 minutes of overtime, we conclude this discrepancy does not preclude a finding of compliance. The Senior Payroll Program Specialist explained that part of the 90.35 overtime hours she believed had not yet been paid to the appellant had in fact been paid in the prior back pay payment and that the error resulted from her receipt of official time cards that had already been paid. CRF, Tab 12 at 11. In any event, the agency's evidence shows that the appellant has been paid for the full 754 hours of overtime back pay in accordance with the Board's Order. CRF, Tab 11.

In light of the above, we find the agency in compliance with its obligation to pay the appellant the appropriate amount of overtime back pay.

Interest on the Overtime Back Pay

Under the Back Pay Act, an employee is entitled to interest on, inter alia, overtime back pay he receives as part of his Back Pay Award. *See* 5 U.S.C. § 5596(b)(1)(A)(i), (2)(A); *see also* 5 C.F.R. § 550.803, .806. Such interest:

> (i) shall be computed for the period beginning on the effective date of the withdrawal or reduction involved and ending on a date not more than 30 days before the date on which payment is made;

(ii) shall be computed at the rate or rates in effect under section 6621(a)(1) of the Internal Revenue Code of 1986 during the period described in clause (i); and

(iii) shall be compounded daily.

5 U.S.C. § 5596(b)(2)(B); 5 C.F.R. § 550.806. During the back pay period at issue in this appeal (November 9, 2013, through November 6, 2016), the interest rate under section 5596(b)(2)(B)(ii) was 3% until January 1, 2016, and then increased to 4% through the remainder of the back pay period. OPM Fact Sheet: Interest Rates Used for Computation of Back Pay, https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/interest-rates-used-for-computation-of-back-pay/ (last visited Mar. 12, 2025).

In its first response to the Board's October 31, 2024 Order, the agency provided the Senior Payroll Program Specialist's declaration, LES, and overtime hours and pay tables showing that the agency paid the appellant interest in the following three payments:

1. On December 20, 2016 (pay period 2016-16), the agency paid the appellant $2,062.20 in interest on the $48,573.25 overtime payment for overtime he would have worked from pay period 5 of 2015 through pay period 17 of 2016, *id.* at 8-9, 17, 24;

2. In May 2017 (pay period 2017-11), the agency paid the appellant $28,369.21 in interest on the $37,870.71 overtime payment for overtime he would have worked from pay period 24 of 2013 through pay period 5 of 2015, *id.* at 9-10, 19, 25; and

3. On July 25, 2023 (pay period 2023-15), the agency paid the appellant $2,678.69 in interest on the $7,447.27 in overtime pay for additional overtime he would have worked in 2013, 2015, and 2016, *id.* at 10-11, 23, 26.

The appellant responded that the agency's explanation regarding the interest payments was unclear, did not demonstrate that such payments were made, and did

not demonstrate how they were calculated. CRF, Tab 13 at 5-7. In response, the agency submitted the Senior Payroll Program Specialist's second declaration, in which she attested that the agency calculated the interest payments using the Internal Revenue Service (IRS) Tax Interest Software, which uses interest rates set by the IRS, "calculates compound interest on a daily basis and displays it on a pay period basis," and bases the interest payment on the full payment for the pay period through the official pay date. CRF, Tab 14 at 10. She stated that the interest on the overtime reflected on the LES with an end date of May 27, 2017, was "actually paid and reflected in the preceding LES with an ending date of '2017-05-13'," but that the other two interest payments were reflected on the same LES as the payment for the overtime itself. *Id.* at 9-10.

The appellant responded that the agency had still failed to clearly explain the interest payments. CRF, Tab 15 at 4-5. In particular, he argued that the Senior Payroll Program Specialist referenced four overtime payments in her latest declaration, even though she previously stated there were only three. *Id*. He also questioned why the $28,369.21 in interest on the $37,870.71 overtime payment was "so much" and how it could be paid before the actual overtime payment. *Id*.

The Senior Payroll Program Specialist responded under penalty of perjury that the interest was processed normally in pay period 2017-11 through the official pay date for the pay period (May 23, 2017) and that the associated overtime payment was sent to the bank on May 19, 2017, which was before the official pay date for pay period 2017-11. CRF, Tab 16 at 7. However, because the overtime payment was paid via the "paid daily" process, it showed on the LES for pay period 2017-12. *Id.* Regarding the amount of the $28,369.21 interest payment, the Senior Payroll Program Specialist explained that the interest was calculated from the time the payment should have been paid until it actually was paid, compounding on a daily basis, at the applicable rate provided by the IRS in its tax software, rather than "simple interest." *Id.* at 8. Lastly, she explained that her reference to four overtime payments was a misstatement on her part; she clarified that there were four

payments in total that included interest but only three payments that included overtime. *Id.* at 8. The appellant did not respond.

We find that the agency's evidence and explanation establish that it has properly calculated and paid the appellant the correct amount of interest on the overtime back pay in accordance with 5 U.S.C. § 5596(b)(2)(B). In so finding, we credit the Senior Payroll Program Specialist's declarations under penalty of perjury that the agency calculated the interest on the overtime back pay from the time the appellant would have earned the overtime pay through the official pay date of the overtime payment and used the IRS-provided interest rates to calculate the interest, which was compounded daily. CRF, Tab 14 at 10, Tab 16 at 8. The appellant has not denied receiving the three interest payments or identified any specific error in the agency's calculations. Accordingly, we find the agency in compliance with its obligation to calculate and pay the correct amount of interest on the overtime back pay payments and to explain its calculations to the Board.

## CONCLUSION

In light of the foregoing, we find that the agency is in compliance with its outstanding compliance obligations and dismiss the appellant's petition for enforcement and the petition for review. This is the final decision of the Merit Systems Protection Board in these compliance proceedings. Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must

file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[4]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a

courtappointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[5]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _Gina K. Grippando_____

                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.